GULOTTA, Judge.
The sole issue in this appeal by plaintiffs is quantum. Liability in this October 2, 1976 rear-end automobile accident was stipulated and the jury returned a verdict in *270 favor of Douglas J. Koob in the amount of $914.95 in special damages, and in favor of Mrs. Mary Cahill Koob in the amount of $600.00 in general damages.
Plaintiffs claim that, because proof established the special damages total $1,612.21, and because the nature and seriousness of Mrs. Koob’s injuries require an award in the range of $7,500.00 to $12,000.00, the jury award is inadequate.
GENERAL DAMAGES
At the time of the accident Mary Cahill Koob, the twenty-three-year-old wife of Douglas J. Koob, was the driver of the automobile. Her husband was not an occupant of the vehicle. She testified that shortly after the accident her knee began to “hurt real bad” and she went to Ochsner Hospital Emergency Room where her knee was x-rayed. She stated that the day following the accident, when she woke up she could “barely move” and was “stiff and sore”. She returned to the Ochsner Hospital Emergency Room and was advised to take hot baths and to use a heating pad. Mrs. Koob continued to have recurrences of pain in the area of the back and the neck and saw an orthopedic surgeon, Dr. Bryan Huncke, on October 12, 1976. She stated that she continued to have problems as of December 6,1977, the date of the trial, with recurrences of pain in her back and neck approximately four times a week, especially when working. She complained that her back hurts when she sits, stands, or walks for an extended period of time or when she engages in vigorous activities, such as dancing.
Mrs. Koob testified further that she had difficulty in her work since the accident because her job as a welder required her to sit for periods of up to eight hours a day and to pick up tubes for welding. She explained that when picking up these tubes she felt pain in the area of the back. The rapid production-line work required in her job “triggers [her] back off real fast.” Holding her neck in a downward position results in back pain.
According to Mrs. Koob, when she drives her automobile for a long distance or stands a great deal, she suffers back pain. She and her husband both testified she now experiences back pain with her menstrual period, and she can no longer engage in bowling or dancing and other activities as she was accustomed to doing prior to the accident. Her husband stated that his wife is often irritable and quick-tempered when her back is giving her problems, and she occasionally has trouble falling asleep. Koob described his wife as a much more easy-going, fun-loving and jovial person before the accident. Koob further stated that she is unable to work as an aluminum welder on occasions because of the back pain.
Mrs. Koob was first seen by Dr. Huncke on October 12, 1976. She complained of foot and calf pain, some neck and low-back problems, stiffness on awakening in the morning, and soreness and aching in the affected areas. Dr. Huncke testified that Mrs. Koob expressed severe subjective complaints of discomfort on pressure or palpation of the neck, mid-back and low-back areas. However, her reflexes were normal and she had a normal range of motion. There were no muscle spasms. In essence, his findings were subjective complaints of soreness, with no objective symptoms. He suggested mild medication, a light exercise program and heat, with restricted activities more or less as her symptoms dictated. When she returned to him on November 12th, he testified, she appeared to be resolving some but not all of the symptoms. She was following the pattern he would expect of a patient with this type of problem, which he considered a sprain-type of injury.
Mrs. Koob next returned to Dr. Huncke on January 31, 1977. She told him that she had wrenched her back at work a few days previously. Her knee was better. Her lower-back was still bothering her, but her mid-back symptoms had subsided. Dr. Huncke testified it was difficult to pinpoint precisely when the effects of the October 2, 1976 accident subsided. Ordinarily that type of injury, he stated, would subside somewhere between six and twelve weeks, although some symptoms might remain as *271 long as six months. He reaffirmed his conclusion from an earlier medical report stating, “As near as I can judge, the symptoms subsided by January as anticipated. She had some recurring back problems, which as near as I can judge based on my clinical experience and general medical knowledge, are unrelated to the incident in question.” Dr. Huncke testified also that Mrs. Koob made return visits to him on February 12, April 2, June 13 and July 18,1977. On June 13th, he referred her to Ochsner’s Physiotherapy Department.
During the time of her treatment, according to Mrs. Koob, she was told by Dr. Huncke to take aspirin, to continue with hot baths and to use “Bengay” as well as a heating pad. She stated that she remained off work for a two week period.
Judging from the $600.00 general damage award, a reasonable conclusion can be made that the jury determined the effect of Mrs. Koob’s accident-related injuries ended on or about January 31, 1977, and that her subsequent problems were not the result of the October 2, 1976 accident. Although the evidence indicates symptoms continuing past January 31,1977, we cannot say the jury erred in apparently reaching a conclusion, based upon the medical testimony, that ordinarily the type of injuries suffered by Mrs. Koob would subside between six and twelve weeks. Furthermore, the jury could reasonably have concluded that any subsequent back problems resulted not from the accident but from a wrenched back which she suffered at work a few days prior to the January 31st visit to Dr. Huncke.
When we consider the medical testimony with that of plaintiffs, we cannot say that the general damage award determined by the jury in this case is an abuse of discretion.
However, plaintiffs argue that, assuming the jury properly concluded Mrs. Koob had recovered on January 31, 1977 from the effects of the soft-tissue injury suffered in the October 2, 1976 accident, nevertheless the $600.00 award is so inadequate as to constitute an abuse. We do not agree. Although we may deem the amount on the low end of the spectrum, we cannot say the jury abused the “much discretion” rule.
SPECIAL DAMAGES
Plaintiffs complain the jury should have awarded $1,612.21 in special damages, because this amount was not disputed by defendants at trial. The special damages to which Mrs. Koob testified were as follows:
Car repair ... $ 647.41
Auto rental . 200.66
Lost Wages, 2 weeks_ 420.00
Ochsner Hospital_ 91.00
Ochsner Clinic. 157.76
Physiotherapy _ 169.00
Less partial reimbursement for car
rental. 73.60
TOTAL $1,612.21
Examining the figure of $914.95 awarded by the jury, and comparing it with the amounts listed above, we find it impossible to compute on what combination of figures the jury based this amount. We assume that if the jury concluded Mrs. Koob’s injury lasted only until January 31, 1977 they must have denied payment for medical .bills after this period. Possibly, in addition, the jury refused to award Mrs. Koob the lost wages, since she was not directed by the physicians to stay home from work, but did so through her own choice. Mrs. Koob testified that the medical bills were broken down as follows: Ochsner Hospital, $45.50 and $45.50, for a total of $91.00; Ochsner Clinic, $33.00, $52.75, $12.00, $15.00 and $45.00, for a total of $157.75. The physiotherapy bill was one total and separate from the other two.
Although it is plaintiffs’ burden to establish entitlement to damages by a preponderance of the evidence and although absent from this record are bills or invoices supporting plaintiffs’ testimony and their claim for special damages, nevertheless, Mrs. Koob did testify and identify the automobile repair bill and a rental bill. She identified a bill from Dick Bohn Ford for automobile repairs in the amount of $647.41. She also identified an auto rental receipt in the sum of $200.55 (not included *272 in the record). She testified further that defendant paid the sum of $73.50 on the rental bill; that she lost two weeks’ pay at $210.00 per week, totaling $420.00;[1] and that she incurred the Ochsner Hospital bill, the Ochsner Clinic bill and the physiotherapy bill. Because these bills were uncontro-verted, we are led to conclude that plaintiffs are entitled to be reimbursed for the automobile repair bill, the automobile rental bill, less the credit, the Ochsner Hospital and Clinic bills and the two-week loss of wages. Because the doctor did not recommend physiotherapy until the June 13, 1977 visit, and we are not convinced the jury believed the effects of the injury carried over later than January 31,1977, we are led to conclude that plaintiffs are not entitled to be reimbursed for this other special damage.
Accordingly, we amend the jury award to plaintiffs for special damages and increase the amount as follows:
Automobile repairs- $ 647.41
Automobile rental- 200.55
Lost wages (2 weeks)_ 420.00
Ochsner Hospital- 91.00
Ochsner Clinic- 157.75
TOTAL $1,516.71
Credit for payment on auto rental 73.50
PLAINTIFFS’ ENTITLEMENT
FOR SPECIAL DAMAGES- $1,443.21
Accordingly, the judgment of the trial court is amended to increase the amount of the special damages awarded to Douglas J. Koob from $914.95 to $1,443.21. In all other respects the judgment is affirmed.

AMENDED AND AFFIRMED.

SCHOTT, Judge,

. Although the doctor did not order Mrs. Koob to stay away from work for any period of time, we do not consider a two week sick leave period to be excessive in this case.